We'll call the next case Goldenstein v. Repossessors. Good afternoon, and we begin our swan song this afternoon with Mr. Salvin. Sir, did you want to reserve any time for rebuttal? Yes, Your Honor, I would request three minutes for rebuttal. Three minutes it is. Go ahead, sir. Good afternoon. May it please the Court. I am Robert Salvin, and I represent the appellate, Piper Goldenstein. The Court has asked us to address the issue of cyanter, whether there is a cyanter element, as part of a civil RICO claim for the collection of unlawful debt. And I would take the position that there is none. There is none because there is no cyanter element in the underlying state law cause of action for usury. Mr. Salvin, fascinating as the issue may be, is it one we can reach? Did you even raise, or did appellees here raise any issues as to cyanter in the district court? No, it wasn't an issue that was argued there. I think it first came up in the appellee's brief. It could be weighed from that perspective, yes. And it wasn't addressed by the district court in its summary judgment decision? No, it wasn't addressed by the district court. So under what circumstances then would we be justified in addressing that issue in the first instance? Well, you know, I would be fine with that being remanded to deal with, you know, to be considered by the district court. Though I think that, though I have viewed it basically as subsumed into what is on appeal because it's just one of the elements that could come up, it was their defense to the issue. But I would be perfectly fine with it being remanded if the court was going to remand the case because, for instance, the only RICO issue the district court addressed was whether repossessing a car was collection activity. And that was its basis for dismissing the RICO claim. And that's an issue that hopefully you're going to agree that it was an erroneous ruling. Why is it erroneous? Because repossessing collection activity in the RICO statute, it's not defined. There's no particular definition for what collection is. So it's going to be the common definition understood by people for what it is to collect a debt. And commonly what creditors always do to collect debts is try to take people's property. They want to get their money first. If they can't get their money, they take their tangible personal property. I don't understand something. I would think that from your point of view, you wouldn't want any discussion at all. So I answer it. No, I don't. I don't want a discussion. It sounded like you wanted to argue. I mean, you were just like, well, this is what the statute says, and it's a fixed violation. And it says no matter what your state of mind. That's what I think. That certainly is our position. It's certainly why I didn't plead scienter. It's why. Well, you would never be pleading it. Right. Because it would be the other side would say, well, we don't have it. And they did not raise that issue, yes. They did not raise that issue in the district court. And so if this panel views it as waived, that would be appropriate. But if the court determined that there was some mens rea requirement as an element of the RICO offense, then as plaintiff, one would be required to plead it and also to avert summary judgment to do something on the record to create a disputed issue of material fact. Well, but the case should be remanded for that if the court would find that there's a scientific element, because we should be given an opportunity to develop it. But, you know, don't think for a moment that these repossession companies don't know what an auto title is. I mean, these auto title loans is a big business. It's a big constituent of a repossession company collecting debts for auto title lenders. They're aware of the interest rates they charge. Didn't you have the opportunity in discovery to develop facts about knowledge and intent? I didn't. I didn't develop it at the time because I didn't know that was the issue, whether they knew the interest. I mean, I presume that they knew it, but it didn't seem to be the issue that hadn't been raised there. What would the knowledge and intent be of what? That there would be, you know, excessive interest or that there'd just be interest or what? You know, really, that's why it's a strict liability offense usually, so for civilly a strict liability offense or cause of action because financial institutions are regulated. They're told what interest rates they can't go beyond, and they're just expected to comply. And if they don't, the consequences flow automatically from that. So I have a question. So why should we intercede when it seems under Pennsylvania law your client had a remedy, right? Your client could say, hey, the most I'm supposed to pay is 6%, you know, whatever the principle is, 6% here. That's what you're going to get. Well, there's no forum where we could directly sue the lender. The lender is an Indian tribe. No, but when they come, you want the car back, right? So isn't your retort, no, I'm not going to pay you whatever 2393 or whatever the exact number is. I'm going to pay you the amount of principle plus 6%. And Mr. Goldenstein tried to do that, but they wouldn't give him back the car. They were intent on getting the amount that the lender tells them to get. And, I mean, they have the power. They have the car. So he doesn't really have much choice. And, you know, that sort of relates to the waiver issue and the Pennsylvania case Thompson v. Prettyman. Because there, you know, the Pennsylvania Supreme Court recognized that, you know, a lender seeking possession of a usurious loan has a lot of leverage, and the leverage to make a debtor settle a claim for usury with a release, and they disapproved that. They said that a release under those circumstances wasn't going to be allowed because if they allowed that, then the usury statute becomes useless. You know, it provides a way for creditors to get around the usury statute easily. So, yeah, he just retried to make a point to the lender, the repossession company, that he didn't owe that money. But there wasn't a way around that. Well, you said the lender repossession company. Those are different entities here. The action, and when you make these arguments about the inability to waive, we're not dealing here with a claim against a lender, and we're not dealing with an LIPO claim. We're dealing with FDCPA and RICO claims. But underlying that is that the reason that there is an FDCPA claim or RICO claim is because of the usury's interest. And the liability for the usury's interest is something that under state law can never be waived, but certainly can't be waived under those circumstances. So if he can't waive or if his liability for the not paying the usury's interest is something that he can't release, then that's the foundation for the FDCPA. Even if you put the interest aside, right? So in order for us to reverse the FDCPA claim, we've got to make a finding that there was no default, right? But there clearly was, right? Well, there certainly wasn't a material default. They could never, this creditor could never have gone to a court in Pennsylvania and filed a replevant action claiming that there was a $9.40 default and entitled them to the car. But at the end of the day, just put the interest aside for a moment. The principal was owed. It was not due at that time. The only payments that were due were on October 6th when the car was repossessed. There would have been a total of three interest payments that were due and unpaid for August, September, October. And the October payment probably was not passed due on October 6th. And those payments at that point were $3 each. I mean, they should have taken, they took $450 from Mr. Goldenstein's bank account. That should have lowered his balance to about, I think it was $596, something like that. That dollar amount, that $9, turns on your recalculation with the number of assumptions. When it comes to the question of materiality, the test in Pennsylvania is a multifactor test that takes account of things like whether there's been reassurance on the part of the debtor to the lender about payment and what the likelihood is of payment. Whereas here, whether it's two or three times, there's been no payment. And the bank account in question was drained so that there couldn't be further payments. How was that not a material default? Because it's only $9.40. How could they get, I mean, you can't count if he wasn't liable for these various interests. Well, if your argument is that's the only interest I owed, then why wouldn't that be material? If I had a loan and I didn't pay the only thing I was supposed to pay, why wouldn't that be a material default? Mostly because I think it's too low and there was a problem with communication. You can't make the argument that it's too low. Well, it can't be de minimis. You just said that it's the only thing you owed. So if it's the only thing you owed, it's got to, by definition, then be material. But all I needed to do was ask Mr. Goldstein, you know, you're behind $9.40 and he pays $9.40. Mr. Goldstein was expecting a bill. He never got a bill. He dealt with a company online called Title Loan America or Title Loan USA, and what he gets is someone taking money from his bank account called Sovereign Payroll. He didn't know who that was. He expected his lender to send him a bill to tell him what he owed and he would pay it. Isn't the question for us whether there is any enforceable security interest? I understand your argument that it is not a fully enforceable security interest, but that's not really the issue before us. I mean, Mulcahy and Section 501 provide exactly what remedies are available, and your client didn't avail himself of those. Well, he did avail himself. The notice requirement that is talked about in Section 501, that does not – no Pennsylvania case has ever held that a debtor needs to take any action to reform a loan agreement, as argued by the appellee. It's automatic that the debtor doesn't owe the usurious interest, and the debtor's lied to. The debtor, Mr. Goldstein, is misrepresented. The amount he has to pay is misrepresented to him, and you have to understand that from his perspective, he – if he was told to pay this debt, he would be told the wrong amount because they tell him an amount that included all this illegal interest. And at that point – and at the point, you know, when – by October 6th, they had already taken 400-some dollars from him that they misapplied. And that was a breach. That was the first breach of the contract. If the applicable interest rate is 6%, the first breach is that they take from him $400 that they put in their pocket to pay interest, when in reality, they should have applied it to the loan-to-pay principle. And that is the first material breach, and that material breach discharged, you know, Mr. Goldstein. What is the authority in Pennsylvania law for that? I mean, Mulcahy makes it clear that it doesn't void the debt entirely. My time is up. It ties up when we're done. Okay. Mulcahy is one case of 100-plus years' history of usury jurisprudence in this commonwealth of Pennsylvania that was ignored by the district court, and it's very – and those cases are adamant that borrowers in Pennsylvania do not owe usurious interest. And they're adamant that lenders routinely use subterfuge and circumvention to get around the usury statute, and the Pennsylvania Supreme Court admonishes trial courts to be on the lookout for this, and if you find usury, don't enforce it. So you have to analyze this on the grounds that the usury wasn't enforceable. That's the only way for it to be consistent with Pennsylvania law. I don't see how these kinds of businesses can run at 6% interest. They have expenses, and it's amazing. I mean, if you think about it. They could run at 25% legally if they wanted to get a license. 25% they can get legally? Yeah. If they wanted to get a license, they don't want to get a license. And, you know, that's directly the Pennsylvania Supreme Court direct – you know, talked about this directly in Cash America Net versus Department of Banking where they specifically held that if an unlicensed out-of-state lender doing business online, making loans to Pennsylvania borrowers, it's subject to Pennsylvania law. If they want to do business here without a license, they're going to be subject to the 6% interest rate. If they – but they can get a license and then to lend under the Consumer Discount Act, and then they could lend up to about 24%. Mr. Salvin, I'd like to make sure that we understand your FCEUA argument. Is that predicated on there being a violation of the FDCPA? Yes. The violation of the FDCPA is taking a vehicle without a present right to possession. And the FDCPA includes repossession companies only for purposes of 1692F6 and not for 1692E, correct? Right. That is correct. So if there's not a violation there, then there's not a violation of the FCEUA, correct? Oh, you mean the state law? I'm sorry. Yeah, the Credit Extension Act. Okay. Oh, that's very different because that – because that – all the sections are applicable. How are all the sections of – you're saying all the sections of the FDCPA are applicable? Yes, because it defines debt collector differently. A debt collector under the Fair Credit Extension Act is anyone trying to – anyone assisting in the collection of a debt directly or indirectly, you know, in any capacity without any limitation on whether they're trying to enforce security interests or not. So, yeah, all the sections. The difference between those statutes is the definition of the debt collector and whether debt collector and creditor. And if it's not a debt collector, then it's a creditor and it's subject to the same provisions, the parallel provisions in subsection B of, what, 2270.4. I'm still not following how, even with the different definitions, when a debt collector cannot be violating the FDCPA section at issue, that you are able to generate a violation by looking to the Fair Credit Extension Act. Because, again, in the FDCPA, it defines a debt collector for a repossession company as a company that is in the business of enforcing security interests, and it defines it that only for purposes of section 1692F. Right. So there are not violations by a debt collector of the other sections of that statute, by the terms of the statute itself. Under the federal law, but when you look for, when you go to the Fair Credit Extension Uniformity Act, there is no limiting definition, specialized definition for the type of debt collector that only enforces security interests. They are any party that assists in debt collection of the debt collector. And what the change, what the state law changes from the federal law is that definition, so that a debt collector under the Fair Credit Extension Uniformity Act is a debt collector for all purposes under the. . . What authority, is there any case you can point to that holds so broadly? I can't point to a case. It's just based on the definitions. And what is the nature of the FCEUA violation? What is the statement or the action that you're saying would constitute the violation? I was focusing on signing the release and paying fee, collection-related fees. But everything would be also a violation of the. . . One other. . . Repossessing the vehicle was also a violation. Taking the money was also a violation of the state, of the Fair Credit Extension Uniformity Act. One other area I'd like you to address briefly, please. And that is in terms of the arguments you raise as to the release. You make reference to it being an illegal pre-injury exculpatory contract. Where, if at all, on appeal or before the district court, did you raise any issue as to the doctrine of unconscionability? Is that something that you're arguing? It's in the complaint. And it's probably in the briefs, but it certainly was in the complaint, specifically in reference to the release. But the release was, there's Thompson v. Prettyman. It was just the Pennsylvania Supreme Court says that a borrower can't release a usury claim. And there's the UCC, which says, describes how you redeem collateral, and says that those terms can't be worried. The only obligation is to pay the debt. And they can't impose any additional requirements. But those may be separate arguments that you raise as to the validity of the release. But are you raising on appeal, at least, the doctrine of unconscionability itself? Substantive, procedural unconscionability? No, I don't think so. I think the arguments in the brief, and they were consistent throughout the case. And they don't encompass an argument on the doctrine of unconscionability itself? They do to the extent that, okay, the FDCPA and the Pennsylvania Fair Credit Extension Uniformity Act have that one in subsection F, have described unfair and unconscionable debt collection practices. And that's the context in which I'm using the term unconscionable. I'm using it in reference to a violation of Section 1692-F. Thank you. I don't have anything else. All right, thanks so much. We'll see you on rebuttal. Is it Mr. Thakkar? It's actually pronounced Tucker, Judge. Tucker? Yes. It's T-H-A-K-K-A-R? That is correct. Okay. It's Indian in origin. Okay. You can tell by looking at me. It's pronounced just the way it's spelled. That's correct. You guys are the court. You can pronounce it however you'd like. I'll respond. May it please the court. My name is Neil Tucker. I'm an attorney with the firm of Sweeney & Sheehan in Westmont, New Jersey, and I represent Repossessors, Inc., Chad Lotvaho, as well as Premier Auto Finance and its owner, Phillip Horrigan, in this matter. Now, the court asked us to address, obviously, whether or not there's strict liability for the collection of unlawful debt in the context of civil RICO, or whether there is a mens rea requirement, and I'm prepared to talk on that. But briefly, I just wanted to correct a few misstatements that I believe that Plaintiff's Counsel made in discussing what happened below. First of all, Judge Gardner decided this case, at least the RICO aspect, on a very narrow issue, in that collection of recovery of collateral is not tantamount to correction of debt. Now, the entire RICO issue was fully briefed by both parties, and that would encompass a discussion of whether or not a RICO enterprise was in existence, and that would necessarily implicate the whole Skienter argument that is being addressed today. Isn't that really a different, at least, potential element of a RICO violation? I mean, what constitutes an enterprise and the definition of an enterprise versus whether you read into, perhaps, the language of the statute or by other kinds of statutory construction some requirement of knowledge or intent, that those seem like different issues. I believe that they're all subsumed in the RICO issue, and whether or not Plaintiff can establish all five elements of whether a RICO violation was committed. And so the issue of Skienter, it's not a stand-alone issue in this case that deserved its own big, bold point heading. It's one of those issues that's kind of wrapped up into the whole ball of what constitutes a RICO violation. Well, did any court address the question of whether there is Skienter as to the collection of unlawful debt term of the statute? With the exception of United States v. Biasucci, which is a Second Circuit case from 1986, I was unable to find any case that addresses it. Certainly, I think that we are unique in that I have never seen, and I thoroughly researched the issue, I never found a case where a collection of unlawful debt in the civil context case made it to a summary judgment motion. Everything else that I was able to find dealt with motions to dismiss for failure to state a claim or motions on the pleadings. This is apparently the only one that's made it to this point so far. But what I found in the Biasucci case is that the court imposed a requirement that the collection of the unlawful debt be knowing and intentional with at least general knowledge of the unlawful nature of the debt. And that law has been cited with approval by this circuit and, in fact, is now incorporated into the criminal jury charges that are published on the court's website. I was reviewing these last night and, frankly, I wish I had reviewed them sooner. I would have certainly cited them to your honors. But of the five elements of RICO, the first, obviously, is the existence of an enterprise. The second is that the enterprise was engaged in interstate commerce. The third was that the defendant be associated with the enterprise.  And on the third page, fifth, that the defendant knowingly conducted, participated directly or indirectly in the conduct of that enterprise's affairs through either a pattern of racketeering activity or the collection of unlawful debt. What is the knowing that you refer to? Do you not know the interest rate? Well, the knowing requirement means that you have to have a general knowledge, a general knowledge of the unlawful nature of the debt. But suppose you don't know the law. Suppose your opponent pointed out you can get 25 percent legitimately with a license. And suppose you don't know that that law doesn't apply because they don't have the license and you know that they're collecting a pretty good interest rate. I mean, would you be knowingly participating? Do you have to know what the interest rate is legal? I don't think that you have to know the specific interest rate, but you have to have a general idea of the unlawful nature of the loan. That is what the court held in Biasucci. And certainly, given that this is activity that occurs all the time in a commercial context, there are presentment warranties under the UCC. There's commercially reasonable conduct. And in this case, my client, Repossessors, my co-counsel there, Mr. Horkin, represented Premier as well as his brother. My client accepted this job in exchange for a representation from RS Financial, who is a loan servicer, that there was a present right to possess the plaintiff's vehicle. That is commercially reasonable. Should that be dispositive, though? You know, I don't think it should be in and of itself dispositive, but it's certainly something that should be considered. And it should be accorded substantial weight in determining whether or not there was a knowledge, a knowledge that this loan was. Well, you know, Judge Krause asked your adversary earlier, do we even get to this? What's your response to that? Well, that's an interesting question because the issues were all briefed. And as I said, Judge Gardner granted the summary judgment motion on the very narrow ground that recovery of collateral is not tantamount to collection of debt. You don't mean the issues were all briefed in the district court? The issues were all briefed in the district court. Sienta was briefed in the district court? Not to the extent that it was here, but certainly it was raised. Where is the reference in your motion for summary judgment to Sienta? I did not mention the word Sienta itself, and I did not mention mens rea. I argued that there was no RICO enterprise because there was no conspiracy, no gathering, or no association, in fact, dedicated to a common purpose. Well, come on. Don't come up and place, well, it's not even semantics, really. I mean, it's the absence of a word, which is not semantics. You either did or you didn't. So we start with the premise that you did not raise it, right? I disagree, Your Honor. So you raised Sienta and you raised knowledge and intent. Those are three possibilities. Okay. I concede that I did not raise Sienta and I did not raise knowledge and intent. What I raised was there was no enterprise in existence because there was no association, in fact, that would qualify as such under RICO because there was no shared intent, no conspiracy, in effect, between the different organizations involved here, between Premier and between repossessors to collect unlawful debt. There was no indication that either organization or its principals had knowledge that this debt was unlawful. That is what I argued in my papers. You did all of this on a page? Wasn't this a very short part of your briefing? My memory may be failing me, Your Honor. I believe that I had argued that the elements of RICO simply were not met. Now, as far as whether this issue can be reached. So help me now. So having raised enterprise, that, in your mind, preserves knowledge and intent? Having addressed. And Sienta? If you take a very broad view, yes, Your Honor. Because I briefed the RICO issue. My interpretation at first was that it was a very narrow issue. The plaintiff responded in kind, and here we are. And the argument was not even advanced by plaintiff below that Premier had actually collected the money from the plaintiff. That's not what is pled in his complaint, and that was not turned out in discovery either, except when I took his deposition. But I don't recall that being a major focus of the plaintiff's argument at the district court either. Counsel, your memorandum in support of summary judgment, if I'm looking in the right place on the RICO claims failing as a matter of law, the argument really consists of one paragraph that says, Plaintiff has asserted two counts against defendants, Chad Labacco and Philip Perkin, the principles of repossession defendants alleging they engaged in an enterprise dedicated to the collection of unlawful debt contrary to RICO. These counts fail for two reasons. Plaintiff cannot demonstrate that any unlawful debt was collected because he cannot show that the loan violated Pennsylvania law or that he exercised his right to void the loan, and because the recovery of collateral used to secure a debt is not tantamount to the collection of debt. Where is there any argument about scienter, even enterprise there? There is not, Your Honor. Now that you have read it, certainly that refreshes my recollection, and I apologize. Let's turn to the rationale that the district court did use, whether collection and repossession can be equated. Why isn't Judge Stengel right in that district court decision where he looked at those things as really a distinction without a difference? In either case, one is looking to collect on the debt. Well, essentially the collateral itself is not tantamount to the debt. In this case, Mr. Goldenstein could have simply abandoned his vehicle. He did not have to redeem it. It is a right that's conferred to him, but it is not a mandatory obligation of his. In this case, he had a 1998 Lincoln Town Car, and I believe that the Kelly Blue Book value for that is less than the amount of the interest that he ended up paying. But don't we look at this from the perspective of the collector? What constitutes collection of the debt? I mean, Mr. Goldenstein may have taken different action and had different options under the law, but if we're looking at does this constitute collection of the debt, what is the meaningful difference between collecting on collateral and collecting on cash? Because the collateral recovery specialist in this case is not the same person who liquidates the collateral, and that is when the debt itself is actually collected and transmitted. The recovery of collateral is only the first step on essentially what is a long road, because it has to be posted for sale. It has to be auctioned off. The proceeds of the action have to actually go to satisfy that debt. So the repossession of collateral in an instance like this, where there is an option to redeem it, is not tantamount to the collection of debt, certainly not under RICO. Why wouldn't we take the definition of collect from the extortion of credit transaction statute, which provides in Section 891 that it involves inducing in any way any person to make repayment. Congress defined collect in a related context very broadly, and when we have made comments in passing, if not a holding, as to the collection of cash not being strictly necessary for collection, we were referring to a case, an 11th Circuit case, that the Pepe case, which you may be familiar with, that was using this definition. Why isn't that the appropriate broad definition that would equate these things for purposes of collection under RICO? Well, RICO itself addresses only the collection of unlawful debt, and it imposes several additional qualifications on the collection of that debt. It has to be debt that is loaned at twice the legal rate, and it has to be incurred in connection with the business of lending money. In a situation like this, I think that Congress was speaking specifically to money as opposed to collateral, and if Congress wanted to include a broader definition of the collection of debt, they certainly could have written it into the statute. Unlawful debt is defined itself in Section 1961. But we're looking at the term collection, which is different than the unlawful debt term in the statute. It's collection of that unlawful debt. That is correct. Certainly I would concede that point, but the fact remains that no court has yet construed the collection of unlawful debt to be tantamount with the recovery of collateral, at least not for RICO purposes. Judge Stengel did. What's that? Judge Stengel did. Yes, Judge Stengel did after our district court opinion was issued. I don't understand how you can sever the collection of the collateral or the seizure of the collateral from the rest of it. I mean, it's all part of one thing. I mean, it's just steps collecting it. You are correct, Your Honor. It is steps towards the process of collection, but it's a step that can be reversed. It's a step that does not have to be taken any further because in this case, as I said, the plaintiff could have abandoned his interest in the car. The lender, in this case, may not have had it. They may not have recovered it. But they're still trying to collect it. Maybe they get frustrated, but if the borrower just gives up on the security, I mean, you're still collecting it. You can sell it. That is correct, Your Honor. I concede the point that I'm walking a fine line here, certainly, and that I would encourage the Court to take a literal reading of the statute as opposed to a broader reading of the statute. Do we even get to reach that question? Because this may be steps toward the collection of the debt. But wasn't that consummated here? At the end of the transaction, there was collection of the full amount, 2,000-plus, which was the principal and interest that was owed. So how do we here not have collection of unlawful debt by any standard? Well, certainly you have the payment of the interest, and we contend that if this matter is actually tried, you'll see that the interest was paid directly to RS Financial and not to Premier and not to repossessors. So in this case, the repossession companies were merely acting as unwitting agents of the loan servicer as well as the lender. And given the purposes of RICO, in order to root out organized crime and to prevent racketeering activity, I think it would be anomalous and unfair to hold a repossession company liable for simply repossessing collateral. They're unwitting because of the certification? They're unwitting because they did not have knowledge of the generally unlawful nature of the loan, Your Honor. But they try to protect themselves, don't they, by getting insurances and rating from the creditor? They do, in fact, try to protect themselves. And this is not a case of willful blindness. This is a case where it is commercially acceptable and reasonable for collateral recovery specialists to accept a warranty from the person engaging their services that there is a present right to possess a certain piece of machinery or a vehicle that is collateral for a loan. I'm sorry. The present right to possess, I think that's what you said, right, the present right of possession is more than that, right? I mean, as long as there's a default, there's a present right to possession, but there's more to the transaction than that. Or are you saying that that's the only representation being made, so as long as that reputation is being made, it's irrelevant whether appended to that is a usurious rate of interest? That is the result that was certainly reached here. In this case, as the panel recognized, the plaintiff was three months behind on his payments. He had made absolutely no payment for that time period. He had paid only $400. At that point, he was in default. And under Pennsylvania law, specifically Section 501, as interpreted by Mulcahy, as well as the later Commonwealth Court case of the NCAS v. Beller. My question is only what is it that repossessors is fortified by? Are they fortified by the fact that there's a representation, that there's a present right of possession, or by the lack of any knowledge with regard to the usurious rate of interest? They're fortified by the fact that there is a warranty that there is a present right to possession that's given by the loan servicer in this case. The information that repossessors obtained from RS Financial before it engaged Premier to recover plaintiff's vehicle was the amount that was outstanding on the loan and a description of the collateral, an account number, as well as I believe the number of days that the loan was overdue. And in this case, they knew that there had been no payment made for approximately 90 days at the time that the car was recovered. Well, would you agree if there is a knowledge requirement that encompasses willful blindness? I would not, Your Honor. Even in the criminal context, doesn't it encompass willful blindness? In the criminal context, willful blindness could get there. And we're talking about the civil context, which one would think would be a lesser standard. I would not think that, actually. Because the same conduct that is prescribed by 1962 can give rise to criminal penalties as well as to civil penalties. I could not find any case law that suggested that there was a lesser standard of proof. There is nothing that says there is a lessening of the elements that must be proven in order to go forward with a RICO civil claim as opposed to a criminal claim. The only difference. The question is, do you think there is a lower threshold for willful blindness analysis in the civil context versus the criminal context? And I thought that was a fairly straightforward question, but apparently not. Okay. So why isn't it? I launched into too long of an answer, and I apologize for that. The only difference between civil RICO and criminal RICO is this burden of proof. It's a preponderance versus beyond a reasonable doubt. Everything else remains the same. And if this Court says that in order to commit a criminal RICO offense, it has to be done so knowingly as opposed to willfully blind, it follows that the same showing must be made in the civil context as well. Thank you so much. Okay. Thank you, Your Honors. And we'll have Mr. Salvin back for three minutes of rebuttal. I would like to mention one case that's not in the briefs that I discovered more recently that Ohio State supported. Like getting the last ten minutes? My research over the weekend, I think, found this case. It's State versus Schlosser, and it's an Ohio Supreme Court case. The citation is 681 Northeast 2nd, 9-11 from 1997. 681 Northeast 2nd, 9-11. What was it again? 6-what? 681. Oh, 681. Northeast 2nd. Northeast 2nd. And what page? 9-11. Okay. It's an Ohio Supreme Court case interpreting their RICO statute, and they conclude that their RICO statute is a strict liability statute. And in a criminal case, they didn't require any further mens rea element than was in the predicate offense. The predicate offense here is- I'm sorry, that's a criminal case you said? It's a criminal case. And they analogized their RICO statute to the federal RICO statute. So, you know, there's some authority for that. I want to mention for a second that it's not commercially reasonable to repossess a car without seeing the loan agreement. I mean, if you're going out without any due process, without any pre-deprivation due process, without any court supervision, and taking someone's valuable property off the street, depriving them of that, and you haven't even looked at the loan agreement, you haven't seen the description of the collateral, you haven't checked up whether the legal identification number is the same, you haven't seen a signature. Perfectly handing a security interest. This is an equitable argument in support of what argument you've articulated. I'm challenging the statement that it was commercially reasonable for a repossessing company simply to rely on the word of the lender that they could repossess a car and have that shield them from any liability under the Fair Debt Collection Practices Act for wrongfully repossessing a car. No, they can't take. The purpose of when Congress enacted Section 16 or 1692 F6A, making it a violation of the Fair Debt Collection Practices Act to take a collateral without a present rate to possession, it was saying that that wasn't appropriate. It was saying that it was imposing strict liability on a repossessing company that would take property without a present rate to possession and certainly telling them that they have to do something more than merely take the word of the lender. The U.S. v. Biassucci was a criminal case, and it relied on the criminal usury statute, New York's criminal usury statute. They incorporated that. Oh, I'm sorry. I see my time's up. Yes? Do you have anything? I don't have anything else. Great. Thanks so much. Thank you. Thank you, counsel. And we'll take this matter under advisement.